THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE BUFFORD, Defendant-Appellant.

First District (3rd Division)   No. 1—91—0464

Opinion filed August 23, 1995.—Rehearing denied February 28, 1996.

Rita A. Fry, Public Defender, of Chicago (Todd Avery Shanker and Vickie Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

In a jury trial, defendant, Maurice Bufford, was convicted of possession of a controlled substance with the intent to deliver and sentenced to 10 years' imprisonment. (720 ILCS 570/401 (West 1992).) Defendant contends that his sixth amendment rights to confrontation, to prepare a defense and to a fair trial were violated when the trial court refused to order the State to disclose its confidential informant. We agree. We reverse and remand for a new trial.

A Chicago police officer obtained a warrant on October 8, 1989, to search a person known as "Marvel" and to search the entire single-family residence at 8851 South Carpenter, Chicago. The underlying probable cause for the search warrant was based on the following information.

On October 8, 1989, the police stopped an automobile for a traffic violation. The police officer searched the driver of the automobile and discovered cocaine in the driver's coat pocket. The driver is the

confidential informant whose identity was sought by defendant. The informant told the officer that earlier in the day he was at "Marvel's" home. According to the informant, "Marvel" wanted him to deliver some cocaine. The informant further stated that he had made numerous deliveries in the past for "Marvel" and that "Marvel" sells about two kilograms of cocaine a week from his home at 8851 South Carpenter. The informant continued that "Marvel" brought out a large brick of white substance, cut out a portion with a knife, weighed it on a triple beam scale and placed the substance into a plastic bag. "Marvel" then handed the cocaine to the informant, who left. The informant was eventually stopped by the police officer.

Based on the above information, given under oath by the confidential informant and the police officer, a search warrant was issued. The warrant gave authority to search a male known as "Marvel," who was 35 years old, 6 feet 1 inch tall and weighed 200 pounds, and the entire premises at 8851 South Carpenter.

Sometime thereafter on the same day, the officer, his two partners and two teams of uniformed officers went to 8851 South Carpenter to execute the search warrant. When they arrived, the police officers knocked on the door and announced themselves twice. When no one answered, they knocked the door down with a sledgehammer. The officers discovered three people inside the house: an elderly woman in the kitchen, and defendant and a woman who were naked and engaged in sexual intercourse in a room in the back of the house. The officers ordered defendant and the woman to cease having sexual intercourse and to stand. The officers searched their clothing which was on the floor. After the search of the clothing failed to uncover anything unusual, the officers allowed defendant and the woman to dress.

All three people were told to wait in the kitchen while the police officers searched the home. In the same room where defendant and the woman had been and which was defendant's bedroom, the officers found a brick of cocaine on the top shelf of the closet, a triple beam scale and other paraphernalia that could be used in the distribution of narcotics. No drugs or money was found on anyone or anywhere else in the house. The officers arrested defendant and gave him his *Miranda* warnings. Defendant stated that he lived in the home and the room where the cocaine was found was his room. On the way to the police station, the officers stopped at a tavern to look for "Marvel" but did not find him there. The evidence seized, including the plastic bag in which the brick of cocaine was found, was eventually tested for defendant's fingerprints. These tests failed to reveal defendant's fingerprints on any of the items.

Defendant's theory of the case was that the cocaine belonged not to him, but to his brother, Norvel, who lived at the same address as defendant and who was 35 years old at the time. Defendant attempted to show that the person referred to in the search warrant as "Marvel" was actually defendant's brother, Norvel. Defendant further asserted that the officers knew this, but settled on apprehending defendant when his brother was not at home during the search.

Defendant, therefore, moved *in limine* for disclosure of the State's confidential informant. It was defendant's position that the confidential informant would be able to identify defendant's brother, Norvel, as the person whom the informant referred to in the complaint for the search warrant as "Marvel." By showing that "Marvel" and Norvel were one and the same, defendant was attempting to establish that the cocaine belonged not to him, but to his brother, Norvel. The trial court denied defendant's motion. The defendant argues that the denial of this motion violated his sixth amendment rights to confrontation, to present a defense and to a fair trial. We agree.

The State argues that defendant did not preserve this issue for appeal by not including it in his motion for a new trial. We, nevertheless, will review this issue pursuant to the plain error doctrine. See 134 Ill. 2d 615(a).

■ In a criminal prosecution, the State has a qualified privilege to withhold the identity of informants. (*Roviaro v. United States* (1957), 353 U.S. 53, 59, 1 L. Ed. 2d 639, 644, 77 S. Ct. 623, 627.) Whether this privilege must give way to a defendant's sixth amendment rights is governed by issues of fundamental fairness. *People v. Lewis* (1974), 57 Ill. 2d 232, 237, 311 N.E.2d 685, 688. See also Illinois Supreme Court Rule 412(j)(ii) (134 Ill. 2d R. 412(j)(ii) (which provides: "Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused")).

The United States Supreme Court long ago in *Roviaro* established the appropriate test to apply when determining when disclosure is compelled. There, the Court held that each case must be decided on its own facts, balancing the public's interest in the flow of information against the individual's right to prepare a defense. *Roviaro*, 353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S. Ct. at 628-29.

Weighing in on the side of an individual's right to prepare a defense is the extent of the informant's involvement in the offense charged. For example, a court will look to whether the informant was a mere tipster, a witness, or was actively engaged in the criminal activity charged. (*People v. Woods* (1990), 139 Ill. 2d 369, 378, 565 N.E.2d 643, 649.) The theory is that the greater the informant's

involvement is, the more relevant the informant's testimony will be and the greater interest the defendant has in gaining the informant's disclosure. As a general guide, this makes perfect sense. To properly address the constitutional rights of a defendant to prepare a defense, however, it is necessary to look beyond this initial query and to inquire into how the informant's potential testimony bears upon the defendant's theory of the case.

Weighing in on the other side of the balance is the concern for the informant's safety. (*Woods*, 139 Ill. 2d at 380, 565 N.E.2d at 649.) Obviously, the greater the showing made by the State of a potential threat to the informant resulting from his disclosure, the greater the need to preserve his anonymity will be.

Applying the standards set forth above, it is clear that the defendant in this case was denied his sixth amendment right to prepare and present a defense. The informant, here, was more than a mere tipster. This informant, according to his own sworn statement relied upon by the police, witnessed and participated in events directly leading to the defendant's arrest for possession and intent to deliver a controlled substance. The informant was in the home at 8851 South Carpenter, received cocaine from presumably the same brick defendant was charged with possessing and intending to deliver, was en route to delivering cocaine cut from that brick, and had received cocaine from that location on previous occasions.

The State argues that the offense with which defendant was charged stands alone and does not rely on the informant's testimony. The State, by focusing on its case, however, misses the point. The crux of the issue is not how the informant's potential testimony affects the prosecution's case, but how it affects the defendant's case.

■ Significantly, the cocaine was not found on defendant's person, but on a closet shelf out of his immediate reach. Ostensibly, that is why the court gave the jury an instruction on "constructive possession." The informant, here, had intimate knowledge of the cocaine found in the home and had the ability to identify the person or persons whom he had seen handle the cocaine in question, the person or persons for whom he was delivering the cocaine when he was stopped, the person or persons for whom he had delivered cocaine in the past, and ultimately the person or persons who possessed the cocaine in question. His testimony, therefore, was critical to defendant, who was defending against the charge of constructive possession.

On the other side of the balancing test, the State has failed to make any specific showing that disclosure would jeopardize the informant's safety. While the potential threat to every informant of

a crime is informed by common sense and inherently recognized in the existence of the privilege in the first instance, to give the balancing test any real meaning it is necessary to inquire into the specific nature of the threat in each case. In the present case, the State never articulated the specific basis for concern for the informant's safety. (*Cf. People v. Woods* (1990), 139 Ill. 2d 369, 381, 565 N.E.2d 643, 650.) To have an impact on the balancing test, more is needed than raising the general concern commonly understood to be present in cases involving confidential informants.

The two cases the State relies upon are distinguishable from the present case. In *People v. Elvart* (1989), 189 Ill. App. 3d 524, 533, 545 N.E.2d 331, 336, defendant relied on an entrapment defense and sought to compel the disclosure of an informant who introduced him to an undercover officer to whom he sold drugs. The court in *Elvart* held that disclosure was not required because it did not aid defendant's entrapment theory, which requires a showing of improper inducement by the police and a lack of predisposition to commit the crime. In the present case, the informant had firsthand knowledge which directly related to defendant's theory of the case. Because of the differing nature of the defense in *Elvart*, we find it uncontrolling.

The second case the State cites is *People v. Deveaux* (1990), 204 Ill. App. 3d 392, 561 N.E.2d 1259. There, the issue of disclosure related to an informant who told the police that on November 2, 1986, he was at a certain apartment where he received cocaine from a person known to him as Mark. Based on this information, the police obtained and executed a search warrant on November 3, 1986, that authorized a search of the apartment and a search of Mark. While executing the warrant, the police found quantities of cocaine and cannabis. Upon exiting the apartment, the police saw a person entering the apartment who identified himself as Mark. The police then arrested and searched him, finding over $2,000 in cash.

It is significant that, in *Deveaux*, the defendant failed to move for disclosure of the informant's identity. The question of disclosure arose on appeal where defendant claimed ineffective assistance of counsel due to his trial counsel's failure to file any motions for discovery, including a motion for disclosure. Because the issue of disclosure was being visited through an ineffective assistance of counsel claim, the inquiry is different. Most notably, a defendant presenting such a claim has the burden of showing that had the informant been disclosed, there is a reasonable probability that the outcome would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) In *Deveaux*, the court, citing a confession given by defendant to police in which defendant

admitted that the cocaine and cannabis were his, held that even had the informant been disclosed the outcome of the trial would not have been different. *Deveaux*, 204 Ill. App. 3d at 398, 561 N.E.2d at 1263.

We find *Deveaux* inapposite to the present case because the court there did not hold that a motion to disclose would have been denied. The holding in *Deveaux* seems to be that even had such a motion been made and granted, defendant still would have been convicted. As to the propriety of granting such a motion, the court in *Deveaux* stated that had such a motion been made, disclosure was not automatic. (*Deveaux*, 204 Ill. App. 3d at 398, 561 N.E.2d at 1263.) Accordingly, *Deveaux* does not control our disposition of the present case.

For the above reasons, we reverse defendant's conviction and remand for a new trial consistent with what is stated herein.

Reversed and remanded.

TULLY and CERDA, JJ., concur.